**Edwin Gregg TILLERY, Plaintiff,**

v.

**Jerry H. LYNN, D.D.S., Defendant.**

**No. 83 Civ. 2624 (CBM).**

United States District Court,
S.D. New York.

April 4, 1985.

Edwin J. Zinman, San Francisco, Cal., Goldsmith & Tabak, New York City, for plaintiff.

Siff & Newman, P.C. by David M. Pollack, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

MOTLEY, Chief Judge.

Plaintiff Edwin Gregg Tillery has commenced this dental malpractice action pursuant to 28 U.S.C. section 1332, alleging causes of action for negligence, fraudulent misrepresentation and breach of warranty.

Plaintiff, as part of his relief for the fraud claims, is seeking punitive damages.

Defendant Dr. Lynn has moved for partial summary judgment dismissing all causes of action grounded in fraud and all claims for punitive damages. In the alternative, defendant moves to stay discovery of his personal assets until such time as the jury determines whether or not plaintiff is entitled to punitive damages. He also seeks to bifurcate the trial, if the jury finds that plaintiff is entitled to punitive damages, as to the amount of such damages which should be awarded. For the following reasons, defendant's motions for partial for partial summary judgment and to stay discovery are denied. Defendant's motion for a bifurcated trial is granted.

## FACTS

Plaintiff, a resident of North Carolina, sought to have esthetic dental work done and consulted three dentists in North Carolina and Georgia concerning the possibility of having his upper front teeth crowned. Plaintiff was advised by each of these dentists not to have his teeth crowned as there was no dental need for crowning. Plaintiff, in July, 1982, then consulted defendant after reading an article about him in a national magazine. This article also described the difference between crowning and bonding, another dental procedure plaintiff was considering. In addition, plaintiff read a book concerning bonding prior to his consultation with Dr. Lynn.

Plaintiff asserts that the defendant dentist convinced him to have his entire mouth crowned for "the most esthetic result." Defendant, however, maintains that he had tried to discourage plaintiff from the crown work and advised him that his teeth did not need to be crowned. Plaintiff also contends that defendant represented to him that the crowns would last at least twenty years but probably a lifetime. Dr. Lynn also stated, according to plaintiff, that he was the most qualified dentist to perform the dental work and that the prior information plaintiff had received from the other

three dentists was not applicable to the type of crown which he utilized. Plaintiff then executed a letter on Dr. Lynn's letterhead which provided:

I, Gregg Tillery, was advised by Dr. Jerry Lynn against having my whole mouth capped. Since this is a very bad psychological problem with me & I insist on having this work done, I feel that Dr. Lynn is the most qualified dentist to do this work.

/s/ Gregg Tillery
7–12–82.

Plaintiff further claims that after the completion of the crowning of his upper teeth, he was unhappy with their esthetic appearance and told defendant that he no longer wished to have his lower teeth crowned. According to the plaintiff, Dr. Lynn represented to him that the bottom posterior teeth needed to be crowned to insure that the occlusion or bite of the lower teeth would correspond correctly to that of the upper crowns. Additionally plaintiff asserts that within hours after his treatment was completed, the porcelain began to chip off the surface of his crowns. He subsequently learned that all the crowns would require replacement because they allegedly did not fit or function properly. He also claims periodontial treatment now is required to treat inflammation of his gums caused by the ill-fitting caps.

## DISCUSSION

When seeking summary judgment, the moving party has the burden of establishing that no genuine issue of material fact remains and that it is entitled to judgment as a matter of law. Fed.R.Civ.Pro., Rule 56; *Robertson v. Seidman & Seidman,* 609 F.2d 583, 591 (2d Cir.1979). Defendant has failed to meet this burden.

Defendant moves for partial summary judgment dismissing the causes of action grounded in fraud, contending that plaintiff, by his own admission at his deposition, had thoroughly investigated the possibility of crown work and bonding and was fully aware of the ramifications even before consulting with defendant about the dental work he wished to have perform. Dr. Lynn maintains that plaintiff had been advised by three dentists and by him not to have the crowns placed. He notes that plaintiff returned home to North Carolina in between the first consultation with him and the beginning of the dental work, but never sought advice from the other three dentists consulted initially. In addition, defendant points out that the plaintiff is a high school graduate with one year of college education. Accordingly, defendant argues, plaintiff did not rely on any alleged representations made by the defendant.

Defendant also argues that its summary judgment motion should be granted since the plaintiff failed to submit the Rule 3(g) statement required under the Federal Rules of Civil Procedure. Even were the material facts set forth in the defendant's Rule 3(g) statement deemed not subject to any genuine dispute, however, the plaintiff's allegations of fraud and claims for punitive damages cannot be dismissed since other facts exist as to which there is a genuine dispute.

For instance, plaintiff urges that it was only upon the representations of Dr. Lynn that he continued to have his bottom teeth capped after he expressed dissatisfaction with the upper crown work. Moreover, plaintiff alleges that defendant fraudulently concealed from him facts which the dentist had a fiduciary duty to disclose concerning the negligent and deficient nature of the crowns placed by him. These are fact issues as to which a genuine dispute exists.

Additionally, it also cannot be said, after carefully reviewing the papers submitted by the parties in connection with this motion and the deposition of plaintiff, that plaintiff had not relied upon the alleged representations made by Dr. Lynn during his initial consultation in New York. Defendant's contention that plaintiff, a layman, had not relied on Dr. Lynn, but rather on an article in a weekly magazine and a book about bonding, is a finding that cannot be made solely from the affidavits sub-

mitted in connection with this motion. Furthermore, whether plaintiff understood the full meaning of the consent form he signed on July 12, 1982, also is in issue. These are determinations that are to be made by the trier of fact in this action.

■ Defendant also argues that as a matter of New York law punitive damages for defendant's alleged fraud may not be awarded. Under New York law, the standard to award exemplary damages in a fraud action is stringent. Although punitive damages now may be awarded in New York in the absence of a showing of a fraud on the public, the fraud directed against private parties requires "gross, wanton, or willful fraud or other morally cupable conduct to a degree sufficient to justify [such] an award." *Borkowski v. Borkowski*, 39 N.Y.2d 982, 983, 387 N.Y. S.2d 233, 355 N.E.2d 287 (1976). *Accord, Idrees v. American University of the Caribbean*, 546 F.Supp. 1342, 1350–51 (S.D.N.Y.1982); *Walker v. Sheldon*, 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488, 491, 179 N.E.2d 497, 500 (1961); *Farm Stores, Inc. v. School Feeding Corp.*, 102 A.D.2d 249, 256, 477 N.Y.S.2d 374, 379 (2d Dep't 1984); *Chase Manhattan Bank, N.A. v. Perla*, 65 A.D.2d 207, 211–12, 411 N.Y.S.2d 66, 69 (4th Dep't 1978).

In *Greenspan v. Commercial Insurance Company of Newark, New Jersey*, 57 A.D.2d 387, 395 N.Y.S.2d 519 (3rd Dep't 1977), a seriously ill patient defrauded of his insurance benefits also was found to be entitled to an award of punitive damages. The plaintiff was required to undergo hospitalization and further testing by the defendant insurance company even though the defendant was aware that the plaintiff was disabled and entitled to benefits. Additionally, even after one of the insurance company's own doctors found the plaintiff to be disabled, the company still denied him benefits. The court noted that punitive damages under New York law now may be allowed if the allegations of the complaint set forth conduct which is " 'gross, wanton, or willful fraud.' " *Id.* at 389, 395 N.Y.S.2d at 521, quoting *Borkowski v. Borkowski*,

*supra*, 39 N.Y.2d at 983, 387 N.Y.S.2d at 233, 355 N.E.2d at 287. *See also Chase Manhattan Bank, N.A. v. Perla, supra* (although generally punitive damages are not available where defendant is found to have fraudulently removed property from reach of judgment creditor, such damages available where defendant, a lawyer, abused his professional status by repeated fraudulent misrepresentations).

■ In this action, defendant dentist is alleged to have abused his professional status by making repeated misrepresentations to plaintiff, a layman, concerning the appropriateness of having crowns placed on all of his teeth. For instance, when plaintiff sought to stop the dental work, defendant allegedly advised him, with full knowledge that such representation was false, that the remaining teeth needed to be crowned for dental purposes. Defendant is also alleged to have misrepresented his own qualifications to plaintiff and to have knowingly used inappropriate crowns on plaintiff's teeth. Whether or not such alleged conduct was gross and involved high moral culpability so as to justify the award of punitive damages is a question best resolved at trial. Therefore, plaintiff is entitled to present its proof at the trial as to whether or not defendant has engaged in the sort of morally culpable conduct that would warrant an award of punitive damages and defendant's motion for summary judgment is denied.

Defendant also has requested that if his motion for summary judgment is denied, discovery concerning his personal assets should not be allowed until such time as a jury verdict as to liability is rendered in the plaintiff's favor. In that regard, he also seeks a bifurcated trial as to the amount of punitive damages, if any, which should be awarded.

■ Discovery as to defendant's personal assets may be undertaken by plaintiff at this time. It would be unduly burdensome to plaintiff, and most particularly a jury and the court, to delay resolution of the issue as to the amount of punitive damages, if any, which should be awarded

until discovery as to defendant's personal assets had been completed. However, as the New York courts have recognized, "defendant's wealth should not be a weapon to be used by plaintiff to enable him to induce the jury to find the defendant guilty of malice, thus entitling plaintiff to punitive damages." *Rupert v. Sellers,* 48 A.D.2d 265, 272, 368 N.Y.S.2d 904, 912 (4th Dep't 1975). *Accord, Chilvers v. New York Magazine Company, Inc.,* 114 Misc.2d 996, 453 N.Y.S.2d 153 (N.Y.Co.Sup.Ct.1982). Accordingly, in the interest of justice and to avoid any undue prejudice during the liability phase of this action, the trial will be bifurcated. No evidence as to defendant's financial status may be presented to the jury during the first phase of the trial by either of the parties to this action. The jury first will render a verdict on the merits and on whether or not punitive damages are warranted in this instance. If punitive damages are found to be warranted, evidence as to defendant's financial status may then, and only then, be presented immediately to the same jury for its consideration as to the amount of punitive damages to be awarded.

Therefore, defendant's motions for partial summary judgment and to stay discovery as to his financial status are denied. Defendant's motion for a bifurcated trial is granted.

The next pretrial conference in this matter is scheduled for April 26, 1985, at 11 A.M.

SO ORDERED.