468 So.2d 1186 (1985)
Patricia Rodriguez, wife of/and George RODRIGUEZ and Mitchell Rodriguez
v.
William R. TRAYLOR, Richard J. Roy, the Continental Insurance Company, Valley Forge Insurance Company and Safeco Insurance Company of America.
No. 85-C-0044.
Supreme Court of Louisiana.
May 14, 1985.
*1187 Harry T. Widmann, Mary Beck Widmann, New Orleans, for plaintiffs-applicants.
Charles R. Capdeville, Mandeville, for defendants-respondents.
BLANCHE, Justice.
Plaintiffs, Patricia Rodriguez and her son, Mitchell, were stopped on Causeway Boulevard in Metairie, Louisiana, when they were struck from the rear by a vehicle driven by William Traylor. Both Mrs. Rodriguez and her son were thrown forward by the impact. Without turning on his emergency blinkers, Traylor exited his car and approached the car driven by Mrs. Rodriguez. Thereafter, another vehicle, driven by Roger Roy, collided with the Traylor automobile which in turn caused the Traylor vehicle to collide once more with the Rodriguez vehicle. Mrs. Rodriguez, who had remained in the car, was again thrown forward by the impact. Later, she was placed on a stretcher and taken to East Jefferson Hospital where she was examined and released that night. In the ensuing days following the accident, her condition worsened and she ultimately underwent three surgeries to remedy her injuries.
Plaintiffs filed suit for the injuries they sustained in the accident against Traylor and Roy as well as their respective insurers. Prior to trial, Mrs. Rodriguez settled with Roy and his insurer for $100,000 which was the limit of Roy's insurance policy. Likewise, Fireman's Insurance Company of Newark, New Jersey, the insurer of Traylor, paid into the registry of the court $5,000 which was the limit of Traylor's insurance policy. Following a trial by jury, Patricia Rodriguez was awarded $14,500 for loss of past wages, $8,500 for past medical expenses, $4,800 for future medical expenses and $25,000 for general pain and suffering. There was no award to Mrs. Rodriguez for loss of future wages, nor was there any award to Mitchell for his alleged injuries. Mr. Rodriguez was also reimbursed for his towing expenses. The trial judge, based on the jury's finding of negligence on the part of both Traylor and Roy, held them to be joint tort feasors and liable in solido to plaintiff. As a result of this finding and because Roy was released prior to trial, the judgment against Traylor was reduced by one-half. This result was affirmed by the Court of Appeal. 461 So.2d 413 (La.App. 4th Cir.1984). Being of the opinion that all damage awards were affected by the inability to pay doctrine, we granted writs to reconsider this jurisprudential rule. 462 So.2d 1254 (La.1985).
The inability to pay rule originated in Williams v. McManus, 38 La.Ann. 161 (1886) and Loyacano v. Jurgens, [50 La.Ann. 441], 23 So. 717 (1898) and has been applied by Louisiana courts ever since. The rationale for this jurisprudentially created rule is found in Cole v. Sherrill, 7 So.2d 205 (La.App. 2d Cir.1942):

*1188 It has never been good policy to bankrupt one to pay another even though the award granted is not in line with other cases involving the same injuries and might not fully compensate the plaintiff for injuries he received. Fair justice between both parties must be arrived at. (7 So.2d at 211).
While the inability to pay rule has been applied by the courts of this state, it has not gone unquestioned. In Davis v. Moore, 353 So.2d 740 (La.App. 4th Cir.1978), in concurring opinions by Judge, now Associate Justice Lemmon of this Court and Judge Boutall, termination of the inability to pay rule was advocated. Moreover, in Daniels v. Conn, 382 So.2d 945 (La.1980) this court restricted the use of inability to pay rule by preventing its application to joint tortfeasors where one joint tortfeasor was solvent. While Louisiana has begun to restrict the inability to pay doctrine, other jurisdictions have never sanctioned its use. In Laidlaw v. Sage, 158 N.Y. 73, 52 N.E. 679 (App.Div.1899), the court stated:
It has ever been the theory of our government, and a cardinal principal of our jurisprudence, that the rich and poor stand alike in courts of justice, and neither the wealth of one nor the poverty of the other shall be permitted to affect the administration of the law.
See also Chilvers v. New York Magazine Company, 114 Misc.2d 996, 453 N.Y.S.2d 153 (1982); Taulborg v. Andresen, 119 Neb. 273, 228 N.W. 528 (1930); Singles v. Union Pacific Railroad Company, 174 Neb. 816, 119 N.W.2d 680 (1963); Lutz Industries v. Dixie Home Stores, 242 N.C. 332, 88 S.E.2d 333 (1955); Watson v. White, 309 N.C. 498, 308 S.E.2d 268 (1983); Story v. Green, 164 Cal. 768, 130 P. 870 (1913); Allard v. La. Plain, 125 Me. 44, 130 A. 737 (1925); Jones & Adams v. George, 227 Ill. 64, 81 N.E. 4 (1907). While we are hesitant to overrule a longstanding jurisprudential rule, after careful consideration, we feel that the wealth or poverty of a party to a lawsuit is not a proper consideration in the determination of compensatory damages. Each litigant should stand equal in the eyes of the law regardless of his financial standing. When the inability to pay rule originated in this State there were no bankruptcy laws in effect and a defendant was subject to losing virtually everything he owned. While the policy behind the inability to pay rule, to prevent the bankruptcy of a defendant, is still a valid concern, with todays modern bankruptcy courts and extensive protections to defendants by virtue of the bankruptcy laws, we feel that this is a more proper consideration for bankruptcy courts and experienced bankruptcy judges rather than a jury which has no expertise in the modern day protections for those who are forced to declare bankruptcy. See La.R.S. 13:3881. We therefore conclude that the trial court should not have permitted the jury to hear evidence of the defendant's inability to pay. Accordingly, we set aside the judgment on quantum and remand to the Court of Appeal for a reconsideration of the award of damages to Mrs. Rodriguez and to her son Mitchell, if any, excluding any evidence of defendant's inability to pay.

DECREE
For the following reasons, the award of damages is reversed and the case is remanded to the Court of Appeal for a redetermination of damages in accordance with this opinion.
REVERSED AND REMANDED.